Good morning, your honors. Adam Wendland appearing on behalf of the appellants and plaintiffs. May it please the court, your honors, I believe we're addressing an appeal that is raised on rather curious facts, at least to me, that a group of small medical providers had provided what they contended was over $8 million worth of services to patients insured by Aetna. And while there was no disagreement that the services were rendered, were rendered those services. We're here before your honors on two issues under the appeal. The first issue is whether a settlement, a purported settlement arising out of a telephonic settlement conference was binding before the district court and as well as whether the district court erred in granting a partial summary judgment. On the first issue, the settlement issue, we submit that there was not a binding settlement agreement reached based on the transcript before the district court. That was the only piece of evidence that the district court looked at to find there was a binding settlement agreement. And when we read through that, there is a great deal of equivocation and qualification by the plaintiff's representative in that conference, including the desire to add an additional or a different term to the agreement to not grant a release to Aetna for fraudulent activities, deceptive activities, or illegal activities. So can I just ask a sort of a threshold question? If we look at the transcript and we agreed with the district court, is there anything else left or does that end your case? Your Honor, I think there would be something left, which is particularly raised by Aetna's answering brief. That is, wouldn't that also be a waiver or a release to the summary, summarily adjudicated claims? Our position on that is no, that would not resolve the summarily adjudicated claims. The transcript and the written agreement from the district court approved references the existing and previously dismissed claims. It does not reference any adjudicated claims as was partially adjudicated. I'm sorry. Go ahead. Sorry. Didn't the settlement agreement release all claims and counterclaims in the case, including those previously dismissed? It did release all the claims in the case. It did not reference the previously adjudicated claims, and that's why I have drawn that distinction that those claims were not addressed at the trial or, excuse me, at the settlement conference. Are you saying that some claims were previously dismissed but were not adjudicated? Or are you saying that there were other claims that were neither in the settlement nor in the previous summary judgment? I mean, I'm not sure I see a distinction between dismissed and adjudicated. If they were dismissed, they were adjudicated, weren't they? There were claims which were voluntarily dismissed by the plaintiffs in the district court case, and there were other claims which were not voluntarily dismissed but were summarily adjudicated. So that is the distinction that I drew. So you call it that a claim that is dismissed on summary judgment is adjudicated but not dismissed? I'm having difficulty what the distinction is. I would think that every claim in this suit that was not in the settlement was both dismissed and adjudicated. What am I missing? Well, I think from the context of the settlement conference, this was the settlement conference after the partial summary judgment was granted. And I mean, there are other instances, some attorneys have a practice of considering resolving cases just for the purpose of appealing summarily adjudicated claims, for example. I don't think that the transcript is entirely clear. It doesn't talk about the summarily adjudicated claims one way or another. But it does seem to be addressing, as I think even Aetna described in their papers, the claims that were at issue at that point in time, which had been called down to a few claims out of the 1,000-plus claims which were initially filed. The principles say, refer to the lawsuit, all claims and counterclaims filed against one another in this lawsuit. So how does that exclude any claims regardless of what their disposition was? Your Honor, I think I would look at what was before the parties at the time, and that was before the parties at the time, the claims which were previously adjudicated were. While I wish we could have more clarity on that topic, I don't think we get more clarity from that transcript or from the long-form settlement that really came down to simply repeating the six terms from the settlement conference transcript without going beyond that. That was a topic that we had attempted to negotiate in the written settlement agreement, but we were never able to get an agreement from Aetna on that topic. When you just said that the, at least as I heard you, that the written agreement is really a recitation of the six claims that were the six terms that were in the conference that day, I thought elsewhere you were trying to state that the long-form added other terms. Are you reciting on that, or did you have some explanation for what you just said? Yes, I do still believe the long-form written agreement expanded the definition of plaintiffs from the transcript at the settlement conference. I don't think that expansion is warranted because it simply was not agreed to, but as per the rest of the terms, those are the six terms which were put into the written agreement. The issue about what happened to the summarily adjudicated claims, which were adjudicated before the conference and obviously before the transcript, were not addressed. We tried to specifically address those, and we just could not get to an agreement with Aetna. Okay, going back to the question of what was the evidence, you said the district court just relied on the transcript. Are you relying on anything other than the transcript? No, we are relying only on the transcript. For example, some of the briefing has some discussion of the part where he says, well, I have an affidavit I want to file. Was that ever filed? I mean, for example, if the affidavit said, and I don't believe anything I just said, I might take that into account, but is there any evidence of anything that was in that affidavit, or is it just griping? The affidavit was not filed. We are relying solely on the transcript. Okay, thank you. Do you want to save some time for rebuttal? Yes, thank you, Your Honors. We'll hear from the other side. Good morning, Your Honors. May it please the Court. I think the Court has hit on exactly the issue that we believe is dispositive here, which is there was a settlement agreement. That settlement agreement was entered into after two full days of a judicial settlement conference with Magistrate Judge Chulagen, and so she was very aware of what had gone on during those two days. She was very aware of the reticence that Dr. Usen, the party representative for all three of the plaintiffs, had expressed at various points. She had given Dr. Usen many opportunities, as we set out very extensively in our briefing, to not enter into a settlement if that was what his intention was. He was represented by counsel. Both he and counsel agreed to all six of the displayed some reticence as to the first term, which is the most important term, the one that Your Honors have been referencing here, which I'd like to go back into a little bit more detail in a moment. Then the judge took a break. Magistrate Judge Chulagen took a break, allowed him to talk to his counsel again, allowed him to look at the written form of the six settlement terms, and then came back on the record. When she came back on the record at that point, he again displayed some reticence about the first term. The judge actually took the time to go with him and told him twice, you don't have to settle. You have free will. You can walk away from this settlement and continue with litigation if that's what you desire to do. And Dr. Usen was very clear that he wanted to settle the case at that point. He had reservations about it. He didn't like it, as a lot of litigants don't like having to settle a case when they think that they're going to win $8 million and then have lost essentially. Gotten to the point at the time of the settlement conference where there was only at that point three claims, three affirmative claims left by a single plaintiff that was Playa at that point, was the only plaintiff. There was about $36,000, I'm sorry, $64,000 at issue with regard to the affirmative claims being asserted by plaintiff at that point. There was a $440,000 counterclaim that my client had asserted that was still against all three of the plaintiffs at that point. And there was a sanctions order that was pending, which Judge Choolagin indicated that she was likely going to grant for sanctions for failure to engage in proper discovery and to cooperate in the settlement or setting the judicial settlement conference, among other things. And she had indicated she was going to award those sanctions. So there was a very high need at that point. Our plaintiffs saw a very good reason to settle, as did my client, and entered into the settlement agreement. With regard to the scope of the settlement agreement, and there's two terms, the court has referenced one of those, and that's the first one, that plaintiffs and defendants will enter into a stipulation to dismiss with prejudice all claims and counterclaims filed against one another in this lawsuit, including claims previously dismissed. We think that is dispositive of the whole issue, that at that point there is no, there's nothing left at that point. Those are all claims and counterclaims. There's no distinction about claims that have been previously adjudicated on summary, on partial summary judgment on the case. But even if that wasn't sufficient, there was a second term, the very, the second term in the settlement agreement agreed, the parties agreed to release all claims against Aetna at subpart A that have been or could have been asserted by plaintiffs in this lawsuit. That clearly covers everything. And B, arising out of or relating to any act or omission by Aetna prior to the effective date of the party's settlement agreement. Again, with regard to these three plaintiffs, both those terms and all three of them in combination, the first term of the settlement agreement and both subparts of the second settlement agreement, adjudicate every single claim or deal with the dismissal of every single claim subject to the settlement agreement. So we don't believe there's anything left and the court should affirm the settlement agreement. We believe that Magistrate Judge Shuligin was in the best position to assess the credibility of Dr. Usen, his intent to settle, whether or not a settlement agreement had been reached. She was very clear twice on the record that a binding settlement had been agreed to, regardless of whether a long form written settlement agreement was ever written or ever agreed to. Judge Shuligin had already determined the binding settlement had been entered into on the record. And all that Judge Barot did was affirm what Judge Shuligin had already found. But he not only considered all of the transcripts, he also considered the briefing that had been done by the parties. He considered an affidavit that had been submitted by Dr. Usen, expressing why he didn't believe that a settlement agreement had been entered into. And he also... Counsel, let me stop you there for a second. You referred to an affidavit. I asked your counsel, your adversary, about the use of the word affidavit in the transcript. I take it that's not, that is, that whatever you just adverted to was not the affidavit he was adverting to at the conference? Your Honor, it was not an affidavit at the settlement conference. It was an affidavit, or it may have been a declaration. I don't recall at this point, but it's either an affidavit or declaration that was asserted in opposition to the motion to enforce the settlement. So that we could find that document in the opposition? Yes, Your Honor. And in that, there was a scattershot approach that Dr. Usen and his then counsel, and that was his, I think, fifth or sixth counsel at that point, had put into play, where he had argued, among other things, that he wasn't competent, that he had been coerced, that he was suffering duress, a whole panoply of things, which had been dropped on appeal. And now we hear a new argument on appeal, which is that there was no meeting of the minds, and there was no absolute unconditional acceptance. That was not even argued in opposition to the motion to enforce the settlement agreement. And we believe it's just yet another seventh counsel's attempt to try to unwind a settlement agreement, which was entered into in binding, and which Dr. Usen just now has, as Judge Barot put it, buyer's remorse. He doesn't like the fact he had to settle the case. He fired his fifth lawyer and his sixth lawyer. Now we're on the seventh lawyer, trying to make new arguments to try to unwind a settlement agreement. That I, frankly, don't know how Magistrate Judge Chulagen could have done a of the settlement, getting both the parties and their counsel, party representatives and their counsel, to agree to each of the six terms, making sure that Dr. Usen understood he had the right to walk away from the settlement, if that was his desire, and giving him every opportunity to object to the settlement if he did that. And notably, both times on the record that Magistrate Judge Chulagen said, we have a binding settlement, there was no objection from Dr. Usen to the statement that there was a binding settlement, and there was no objection from his counsel. And so it was whatever else was going on with his affidavit that we've heard of, it's some ghost affidavit that has never been filed, it's never been offered, it's not in the evidence, we have no idea what it says, whether it has anything to do with the claims that issue in this lawsuit, or that were at issue in this lawsuit prior to the settlement, and we think it's just a red herring. And that was not brought up until after all six terms were agreed to, and it was at that point that he talked about, Dr. Usen talked about, what sounded to me more like a personal injury, like he was complaining that Edna had done something personally to him to ruin his career, because as you may recall from the briefing, Dr. Usen lost his medical license. I think he blamed my client for that for some reason, even though it was the California Medical Board that took that action against him. And so I can speculate, but whatever was in the affidavit, or whatever he wanted to state in the affidavit, was said after he had already agreed to all six terms on the record. His counsel had agreed to all six terms on the record. Magistrate Judge Shuligin said, we now have a binding settlement, nobody objected to that at that point, and we believe that that should be the finding of the binding settlement on the record that was properly affirmed by Judge Barot. We believe that ends the case. Unless there's any questions, I'm happy to. Apparently not. All right, thanks very much. I think we have a few minutes left for rebuttal. In quick rebuttal, first, the argument that there is no settlement agreement or no meeting of the minds is not new. It was raised in opposition to Aetna's motion to enforce the settlement agreement, as well as additional briefings thereafter before Judge Barot. The issue about not objecting when the magistrate declared she believed there was a binding settlement agreement, that is in fact when Dr. Usen, the plaintiff's representative at the conference, raised the affidavit. And he did use words of equivocation that responding to the declaration there was a binding affidavit, well, I have an affidavit I want to file. She repeated it. He again said, but I have an affidavit I want to file. And it seems that there cannot be an objective assent or an objective manifestation of a complete agreement, even if the parties are in agreement about some of the specific terms. We don't have a complete agreement until the party has accepted without equivocation and absolutely. I just don't see that that occurred on the transcript, given the fact that Dr. Usen repeated he did not want to release Aetna for fraudulent, deceptive, or illegal practices. What's your position as to the comments of your opposing counsel here that the claims that Dr. Usen might have been talking about were individual claims, that he might have continued to have some idea or belief that he had personal individual claims against Aetna, and those were the claims that he was not interested in releasing. The settlement agreement doesn't compel Dr. Usen to release any of his individual claims. So what do you make of that argument? I can only go based on what the transcript says, and I think that's the four corners that we should be focusing on in determining whether there's a settlement. The only thing that I can look at and see in there is Dr. Usen's statement that repeatedly he didn't want to settle, that he wanted to see the long-form agreement that Mr. Newman, who is also here today, was at the conference promised Dr. Usen that they would have an opportunity to craft a written agreement and work out any of those remaining items. We've also cited to law that an agreement to agree is not a binding agreement, at least under California law. So that's what I see there in response to that is Dr. Usen clearly had a fraud, deceptive behavior, or illegal conduct. And I would pair that, I know we haven't focused on it today, but I would pair that with the summary judgment issue that Aetna moved on in regard to the non-assignability clauses. Aetna had brought a counterclaim in the case seeking to recoup money that it had already paid under plans with apparently these non-assignability clauses. That is one area of law that this Ninth Circuit and other circuits have looked at as potentially being an estoppel or an exhaustion problem for a plan, that if the plan makes representations or is paying on claims under a non-assignability clause, they might not be able to enforce that clause. So again, that's speculation. I don't know more than that, and what happened thereafter with the written agreement, all of that is in the record. I can only say to my eyes that didn't look like a binding settlement agreement because Dr. Usen was simply not allowed to finish the statements that he would like to have made. And, you know, I know we work hard on mediations or settlement conferences. I think there's always a wish and from speaking, and I think that's what happened here under that transcript. Unless your honors have further questions, I will submit on that. All right. We thank you for your arguments. The case of Infoneuro Group versus Aetna Life Insurance Company is submitted, and we're adjourned for this session. All rise. This court for this session stands adjourned.
judges: Boggs, IKUTA, UNKNOWN